**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

IN RE: SEARCH WARRANTS

Case Nos. 26-mj-205 (JFD)
26-mj-206 (JFD)
26-mj-207 (JFD)
26-mj-208 (JFD)

**FILED UNDER SEAL**

**ORDER KEEPING UNDER ADVISEMENT THREE SEARCH WARRANT APPLICATIONS AND DENYING THE FOURTH**

On February 24, 2026, the undersigned was presented with five search warrant applications related to *United States v. Armstrong, et al.*, Case No. 26-cr-25 (LMP/DLM), in which the grand jury has alleged that a number of defendants conspired to violate the right to freedom of religious worship of persons attending a religious service at Cities Church in Saint Paul on the morning of Sunday, January 18, 2026. The undersigned declined to sign the proffered search warrants and issued a written order under seal explaining his decision. The government has now amended four of the five search warrant applications[1] and re-submitted them for the Court's review. Since three of the warrants are directed at seizing records documenting activity by defendants to prepare a broadcast, the Privacy Protection Act, 42 U.S.C. § 2000aa, potentially forbids the issuance of those three warrants. The Court will therefore require, consistent with regulations promulgated by the Attorney General concerning warrants directed at the press, that the government notify the

---

[1] No. 26-mj-209 has not been resubmitted.

three defendants whose records are at issue in search warrant applications 26-mj-205, 206, and 207 and that those defendants be given an opportunity to intervene before the Court decides whether those search warrants will be authorized.

The fourth search warrant application, No. 26-mj-208, asks the Court to require Apple to disclose information about the telephone number subscribed to by Ian Davis Austin, who is alleged to have participated in the protest at Cities Church on January 18, and to have thrown his phone to a group of people when it appeared his arrest was imminent. Because that search warrant application does not establish probable cause to believe that the records of Mr. Austin's phone will contain evidence of the commission of a crime, that warrant application is denied.

## THE APPLICATIONS TO YOUTUBE

The search warrants in Nos. 26-mj-205, 206, and 207 all seek documents from Google, as the owner of YouTube, about the YouTube accounts of defendants Don Lemon, Georgia Fort, and William Kelly. The warrants each seek videos posted to the YouTube channel of the account holder (Lemon, Fort, or Kelly, as the case may be), as well as names, addresses, telephone numbers, internet protocol addresses, and records of user activity, among other information, concerning the particular YouTube account. The Court was concerned, when these three search warrant applications were originally submitted, that the request for search and seizure of "subscriber" information meant the government was seeking to compile a list of people who had viewed the videos produced by these three

defendants. That issue appears to have been resolved,[2] and the Court is now satisfied that these three search warrant applications seek only information concerning the use of their YouTube channels by the three named defendants themselves.

These applications remain concerning on First Amendment grounds, because they seek information that was related to the preparation of broadcasts. As is typical of search warrants to third party providers, Google, the owner of YouTube, would be ordered to provide to the government all records that are responsive to the search warrant; the government itself would then go through that trove to identify items that are within the scope of Attachment B.2 of the three search warrants, which defines relevant documents as those that are evidence of the crimes charged or of "the state of mind" of the defendant. There is no indication that the government has plans to put a filter team in place or even that a filter team was considered, no indication that the government engaged in any negotiations with either YouTube or the defendants over the scope of the warrants, and no indication that use of subpoenas duces tecum was attempted before resort was made to search warrants.

## ANALYSIS

The search warrant applications to YouTube are concerning because certain governmental searches for the materials sought by those three warrants transgress the Privacy Protection Act, 42 U.S.C. § 2000aa. The search warrant application for Mr.

---

[2] The sealing materials submitted with these three search warrant applications still call for the sealing of "subscriber" information, even though subscriber information is no longer sought. Should these warrants be submitted a third time, that oversight should be corrected.

Austin's phone fails because the affidavit in support of that application simply does not establish probable cause to believe that evidence of a crime will be found on the phone. The Court first analyzes the three applications for YouTube search warrants, then the application for a warrant authorizing a search of Mr. Austin's phone.

## THE PRIVACY PROTECTION ACT

When the government presented these warrants, both originally and for re-presentment, it did not direct the Court's attention to the Privacy Protection Act, 42 U.S.C. § 2000aa. It should have. *In the Matter of the Search of the Real Property and Premises of Hannah Natanson*, No. 1:26-sw-0054 (WBP), 2026 WL 510727, at *5 (E.D. Va. Feb. 24, 2026) (expressing "significant concern" at the government's failure to address the Privacy Protection Act in a search warrant application within that Act's scope and pointing out that this omission "undermined the Court's confidence in the government's disclosures in this proceeding.").

Congress passed the Privacy Protection Act in response to the Supreme Court's opinion in *Zurcher v. Stanford Daily*, 436 U.S. 547, 565 (1978) (holding that no requirements beyond those of any other search warrant are needed even when the place to be searched is a newspaper office). *See Binion v. City of Saint Paul*, 788 F. Supp. 935, 948 (D. Minn. 2011) ("the [Privacy Protection] Act was passed in response to *Zurcher v. Stanford Daily*"). The Act forbids "a government officer or employee, in connection with the investigation or prosecution of a criminal offense, to search for or seize" (a) work product materials or (b) documentary materials "possessed by a person reasonably believed

to have a purpose to disseminate to the public a newspaper, book, broadcast, or other similar form of public communication. . . ." 42 U.S.C. § 2000aa(a), (b).

In this case, defendants Lemon, Fort, and Kelly were all, according to the search warrant application affidavits submitted by the government itself, preparing YouTube broadcasts about the events at Cities Church. However, the materials sought by the search warrants were not to be seized from the persons preparing a broadcast, but from a third party, Google, the owner of YouTube. If the materials are still the possessions of the defendants, even though parked on YouTube's servers, then the Privacy Protection Act applies and adherence to government counsel's duty of candor towards the tribunal should have led them to inform the Court of that statute. Government counsel can argue against the statute's applicability, but they cannot ignore it.

There is an exception to the Privacy Protection Act's prohibition on searching for and seizing work product materials and documentary materials if "there is probable cause to believe that the person possessing such materials has committed or is committing the criminal offense to which the materials relate . . . ." 42 U.S.C. § 2000aa(a)(1), (b)(1). Again, the question of who possesses the materials becomes critical. While it is true that a grand jury, through its indictment, has found probable cause to believe that these three defendants committed "the criminal offense to which the materials relate," if these defendants do not possess the materials sought, but YouTube does, then (a) the exception to the proscription on searches does not apply because there is not probable cause to believe that YouTube committed the crimes being prosecuted but (b) the Privacy Protection Act might not apply because YouTube also is not a person who is preparing a broadcast. And the government,

as noted above, has not provided any guidance on this point, preferring to stay silent on the entire question of the applicability of the Privacy Protection Act.

The Privacy Protection Act requires the Attorney General to promulgate regulations directing federal government attorneys to follow certain procedures when seeking materials from members of the press.[3] 42 U.S.C. § 2000aa-11. While the Court recognizes that these regulations are for the internal regulation of the actions of government counsel, the Court also recognizes these regulations, promulgated by Attorney General Pamela Bondi in May of 2025, as the government's understanding of general, Fourth Amendment reasonableness in this context. 28 C.F.R. § 50.10. Almost none of the procedures set out in the regulations seem to have been followed in this case, though to be sure, the Court would not be aware of some of those procedures (for example, obtaining permission from the Attorney General to apply for these warrants).

There is no indication that negotiations with these defendants occurred, and the applications are not narrowly drawn. *See* 28 C.F.R. § 50.10(c)(4)(iii)(A), (c)(4)(v); *see also* 28 C.F.R. § 50.10(d)(3) (requiring Attorney General to consider § 50.10(c)(4) for news-media search warrants). Most pertinently to the Court, there is no indication that the

---

[3] The Court is aware that the Privacy Protection Act was passed into law at a time when members of the press were readily identifiable as such, and that the drafters of the Act apparently did not foresee a world in which anyone with a YouTube channel could prepare a broadcast. It could well be that the Privacy Protection Act could benefit from an upgrade, but if that Act is to be rewritten, it will have to be done by Congress, not by the undersigned. The Act does not concern itself with who is and is not a journalist, but is applicable whenever materials are seized by the government from a person preparing a book, broadcast or other form of public dissemination of information. These three defendants were preparing a broadcast and that is enough to require close analysis of the Act's potential applicability.

defendants were "given reasonable and timely notice" of the impending warrant. *See id.* § 50.10(e)(1)(i). As Magistrate Judge William B. Porter explained in the *Hannah Natanson* case, aspects of the Privacy Protection Act are challenging to interpret. *Hannah Natanson* 2026 WL 510727, at *6 ("The PPA is far from a model of clarity. . . . [I]t contains prohibitions, exceptions, and counter-exceptions. Within the same statute, the PPA defines the press differently depending on whether work product materials or documentary materials are at issue."). The Court will benefit from adversarial briefing and argument on these issues, and the Court cannot foresee any harm that will come from advising the defendants that these three warrants have been applied for. The government will therefore be ordered to give "reasonable and timely" notice (under seal) to the defendants of these warrant applications. The Court will then request briefing and argument before making a decision.

### The Warrant Application for Mr. Austin's Telephone Records Does Not Establish Probable Cause.

The warrant application for Mr. Austin's telephone records, 26-mj-208, is denied because it does not establish probable cause to believe that there will be any evidence among those records. The affidavit states that Mr. Austin was one of the protestors at Cities Church (Aff. ¶ 17) and that while there he and others "oppressed, threatened, and intimidated" members of the clergy and members of the congregation (*id*.). The affidavit also states that Mr. Austin is seen on video speaking directly with co-defendant Lemon. The affidavit concludes with Mr. Austin's arrest at a Park and Ride lot near the Whipple Federal Building, and states that he threw his phone to a group of nearby protestors, saying

"don't let them get my phone" as he did so. There is no indication in the affidavit that Mr. Austin was seen using his phone to take photographs or videos while at Cities Church, no allegation that any such photographs or videos have turned up on social media, and no indication that Mr. Austin used his phone to communicate, via voice, email, or text, with other defendants. The application, in short, does not come close to establishing a nexus between the crime charged and the telephone records whose seizure is sought; therefore probable cause is lacking. The warrant applied for in Case No. 26-mj-208 is denied.

### ACCORDINGLY, IT IS HEREBY ORDERED THAT:

1. The applications for search warrant in Case Nos. 26-mj-205, 206, and 207 are UNDER ADVISEMENT pending briefing and argument, which will follow the government's notification to counsel for defendants Lemon, Fort, and Kelly of the warrant application in their case and this Order.

2. If the government seeks further review of this Order by a district judge, it may delay disclosure of the search warrant applications in Case Nos. 25-mj-205, 206, and 207 and this Order until the conclusion of that review.

3. The application for a search warrant in Case No. 26-mj-208 is DENIED for lack of probable cause as described above.

Dated: March 6, 2026

*s/ John F. Docherty*
JOHN F. DOCHERTY
United States Magistrate Judge

8